APM ENTERPRISES, LLC, Avtar Grewal and Grewal Hotels, Inc., Appellants,

v.

NATIONAL LOAN ACQUISITIONS COMPANY, Appellee.

No. 06–11–00069–CV.

Court of Appeals of Texas, Texarkana.

Submitted: Dec. 27, 2011.

Decided: Jan. 5, 2012.

---

Jesse L. Nickerson, III, Nickerson Law Office, Paris, for appellants.

Millard O. Anderson, Jr., McKinney, for appellee.

Before MORRISS, C.J., CARTER and MOSELEY, JJ.

## OPINION

Opinion by Justice CARTER.

### I. Background

National Loan Acquisitions Company (National) filed a motion for summary judgment in a suit on a promissory note against APM Enterprises, LLC, as maker of the note, and Avtar Grewal and Grewal Hotels, Inc., as guarantors of the note (collectively referred to as Grewal).[1] National attached the affidavit of Peter Peerboom to its motion, stating the note was in default in that it was matured by acceleration. In response, Grewal maintained that it did not receive a notice of intent to accelerate or a notice of acceleration for the original note or the modified note.[2] On appeal, Grewal alleges the trial court erred in granting summary judgment be-

---

1. In May 2006, APM Enterprises, LLC, a Texas limited liability company, signed an unsecured promissory note in the amount of $200,000.00 to GT's Investments, LLC, a Texas limited liability company. Avtar Grewal, individually, and as vice president of Grewal Hotels, Inc., signed as guarantor of the note. The note was then transferred from GT's Investments, LLC, to National without recourse.

The original maturity date for the promissory note was May 23, 2009.

2. The promissory note was modified by agreement of the parties on June 16, 2009. The modified note indicates a loan amount of $196,158.62, a maturity date of May 23, 2014, and an interest rate of ten percent effective May 23, 2009, through maturity of the note.

cause there is an issue of material fact regarding whether the note was properly accelerated to maturity.

Because we determine there was no evidence of notice of intent to accelerate to maturity, we reverse the judgment of the trial court and remand for further proceedings.

## II. Standard of Review

We conduct a de novo review of a traditional summary judgment proceeding. *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215 (Tex.2003). On appeal, the movant must show that there is no material fact issue and that the movant is entitled to judgment as a matter of law. *Limestone Prods. Distrib., Inc. v. McNamara,* 71 S.W.3d 308, 311 (Tex.2002); *Burns v. Stanton,* 286 S.W.3d 657, 659 (Tex.App.-Texarkana 2009, pet. denied). The question is not whether the summary judgment proof raises fact issues as to required elements of the movant's cause or claim, but whether the summary judgment proof establishes, as a matter of law, that there is no genuine issue of material fact as to one or more of the elements of the movant's cause or claim. *Gibbs v. Gen. Motors Corp.,* 450 S.W.2d 827, 828 (Tex. 1970). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *McNamara,* 71 S.W.3d at 311; *Rhone–Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 223 (Tex. 1999).

## III. Analysis

Initially, we examine the motion for summary judgment with the attached affidavit of Paul W. Peerboom, senior vice president of National.[3] Peerboom's affidavit states:

> [T]he note is in default in that it has matured by acceleration and has not been paid in full. The guaranty is in default in that the note has matured and has not been paid in full.
>
> . . . .

The Peerboom affidavit further indicates a total amount due

> of $190,730.07 in principal plus $5,075.54 in accrued interest together with $400.00 in late fees. . . . [D]espite demand . . . Grewal [has] refused to pay the amounts due under the terms of the note and the guaranty.

Because it failed to identify a specific act or omission that would constitute a default, Grewal attacked Peerboom's affidavit as conclusory. Grewal countered Peerboom's affidavit with the affidavit of Avtar Grewal, asserting the modification of the note, and also alleging that:

> I have not received a notice of intent to accelerate or a notice of acceleration for the original note or the note as modified.

In response, National filed the affidavit of Dan Johnson, an employee of National. The Johnson affidavit, with attached correspondence, was filed as a stand-alone document on May 9, 2011.

On appeal, Grewal claims that National did not adequately provide notice of intent to accelerate the indebtedness and that, therefore, acceleration was improper. A negotiable instrument that is payable at a definite time may provide for the right of acceleration of the debt on default. TEX. BUS. & COM.CODE ANN.

---

3. In addition to Peerboom's affidavit, the May 23, 2006, promissory note, the assignment of the May 23, 2006 promissory note to National, without recourse, and the guaranty of the note executed by Avtar Grewal, individually, were attached to National's motion for summary judgment.

§ 3.108(b) (Vernon 2002). Because acceleration of a debt is viewed as a harsh remedy, however, any such clause will be strictly construed. *See Ramo, Inc. v. English,* 500 S.W.2d 461, 466 (Tex.1973). Texas law requires clear notice of intent to exercise acceleration rights, followed (if the debtor continues in default) by notice of actual acceleration. *See Ogden v. Gibraltar Sav. Ass'n,* 640 S.W.2d 232, 233–34 (Tex.1982). "If the required notices are given, acceleration occurs." *Burns,* 286 S.W.3d at 661.

Waiver of such a notice is not an issue.

 Here, National claims its summary judgment evidence proved that notice of intent to accelerate was given on four separate occasions.[4] The first such alleged notice is set forth in a letter to APM Enterprises (designated as "borrower") dated July 29, 2010. The letter purports to set forth past due loan payments and late charges, and advises that "all due loan amounts be remitted to National Loan Acquisitions Company by Monday, August 9, 2010. Otherwise, this loan will be referred to counsel for legal action."

Next, National points to e-mail correspondence dated September 3, 2010, from Dan Johnson with National Loan Acquisitions to AV Grewal regarding "APM Enterprises Loan # 7973." The e-mail indicates that the loan is past due and "my letter dated July 29, 2010, has expired without any action from you." The e-mail closes with the statement that "unless I hear from you by the end of today, this loan will be referred to our legal counsel for collection." A second e-mail was sent to Grewal on October 4, 2010, in response to Grewal's request to modify the promissory note to provide for interest-only payments for at least twelve months:

> I understand that you are requesting to have interest-only payments for 12 months. However, National Loan Acquisitions Company prefers to have the debt paying down and the 6 months I/O is the most generous concession we will make. If this modification is not acceptable to you, we will pursue legal action to collect the debt.

National sent a final e-mail to Grewal on October 28, 2010, indicating it has not received the executed modification letter and asking that the executed letter be posted for next day delivery "or this matter will be referred to legal counsel for collection."[5]

National contends notice of actual acceleration was given in the form of e-mail correspondence dated November 9, 2010, advising that the executed modification has yet to be received, that National's loan is delinquent for the months of August, September, and October, and that "this loan is being referred to our attorney for collection and you will be responsible for any legal fees incurred."[6]

National cites *Burns* in support of the proposition that notice of intent to accelerate does not always require use of the phrase "intent to accelerate." *Burns* can

---

4. The referenced letter to APM Enterprises and various e-mail correspondence were attached as exhibits to the Johnson affidavit.

5. The modification letter referenced in this e-mail correspondence is not a part of the record on appeal.

6. The referenced e-mail correspondence is attached to the affidavit of Johnson. The Johnson affidavit, with attached e-mail correspondence, was filed as a stand-alone document on May 9, 2011. The affidavit does not refer to National's summary judgment motion, or state that it is filed in support of that motion. Grewal does not directly address the issue of whether the e-mail correspondence could appropriately be considered as summary judgment evidence.

be distinguished on its facts. In *Burns,* this Court held the bank's admonition that it will take "all applicable enforcement action," including enforcement action "as defined by the subordination agreement," was sufficient notice of the bank's intent to accelerate, even though the letter did not use the phrase "intent to accelerate." The subordination agreement's definition of "enforcement action" included the acceleration of the subordinated indebtedness. The notice of default therefore necessarily included the required notice of intent to accelerate. *Burns,* 286 S.W.3d at 662.

National further relies on *Fraps v. Lindsay,* No. 01–02–00068–CV, 2003 WL 22810440 (Tex.App.-Houston [1st Dist.] Nov. 26, 2003, no pet.) (mem. op.) as authority for the proposition that its notices were sufficient. In *Fraps,* a collection letter advised the debtor that if he failed to pay the past due payment and interest, Fraps would "sell or mortgage the property." *Id.* at *6. Fraps is distinguishable; both the trial and appellate court concluded that the debtor made a "quasi-admission" that the note was accelerated, which was "some evidence" to support the finding of the trial court. *Id. at* *7. While the correspondence in this case indicates that the matter will be referred to legal counsel, the notice in *Fraps* indicates an intention to sell or mortgage the subject property. Ordinarily, one cannot sell collateral without first accelerating the maturity of the note; conversely, one can "refer something to legal counsel" or even "take collection action," by forcing only the matured portion of the note. *Fraps* is both distinguishable and nonpersuasive.

Finally, National relies on *Dillard v. Freeland,* 714 S.W.2d 378, 380 (Tex.App.-Corpus Christi 1986, no writ), regarding the requirement for a notice of intent to accelerate. In that case, the creditor made an oral demand for payment stating that if the default was not cured, "the note would be called and the property posted for sale." *Id.* at 381. The creditor explained that calling the note meant that past due installments were due as well as the entire note. While the words "acceleration" or "maturity" were not used, an explanation that failure to pay the debt will result in the note being "called" is a more commonplace method of expressing the consequences of default.[7] Even though National's correspondence evidences the intent to pursue legal action "to collect on the note," such statements do not equate with notice of intent to accelerate the note.[8] Because the evidence presented does not show that National provided a notice of intent to accelerate, National was not entitled to judgment as a matter of law.

## IV. Conclusion

The judgment of the trial court is reversed, and this matter is remanded for further proceedings.

---

7. We are not necessarily endorsing or approving this method of giving notice of acceleration; it is at least more descriptive than the notice given here that the debt would be referred to an attorney for collection. The "collection" could have been referring only to the matured portion of the debt.

8. National maintains that notice of actual acceleration was given in its letter of November 9, stating in the present tense that "this loan is being referred to our attorney for collection." Because the law requires both a notice of intent to accelerate *and* a notice of acceleration, we need not address this issue.