In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-11-00087-CV

                                                ______________________________

 

 

                               MELVIN EARL GOODSPEED,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                      On Appeal from the 202nd
Judicial District Court

                                                             Bowie County, Texas

                                                       Trial Court
No. 00F0659-202

 

                                                    
                                              

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                                        Opinion by Justice Moseley








                                                                   O P I N I O N

 

            Melvin Earl Goodspeed
was convicted of aggravated sexual assault of a child in 2001.  He was sentenced to ninety-nine years’
imprisonment and was ordered to pay $237.25 in court costs.  On July 11, 2011, the trial court noticed a
withdrawal of the $237.25 from Goodspeed’s inmate
trust account.  Goodspeed
appeals from a withdrawal notification on the grounds that it was issued
outside of the trial court’s “plenary power,” “without any notice being given,”
and without an itemization of costs.  We
dismiss the appeal for want of jurisdiction. 


            Section 501.014(e) of the Texas
Government Code provides that upon “notification by a court, the department
shall withdraw from an inmate’s account any amount the inmate is ordered to pay
by order of the court under this subsection,” and shall make payment “as
ordered by the court.”  Tex. Gov’t Code Ann.
§ 501.014(e) (West Supp. 2010).  A
notification to withdraw funds can be issued “as payment in full for all orders
for court fees and costs.”  Tex. Gov’t Code Ann.
§ 501.014(e)(4).  Proceedings under this section are civil
in nature and are not part of the underlying criminal case.  Harrell
v. State, 286 S.W.3d 315, 316 (Tex. 2009).

            The Texas Supreme Court held in Harrell that because these post-judgment
collection efforts are designed to reimburse the State, and not to punish the
inmate, “due process is satisfied if the inmate receives notice and the
opportunity to be heard after funds are withdrawn.”  Id.  The opportunity to be heard can be secured
“via motion made by the inmate.”  Id. at 321.  Here, it is clear that Goodspeed
received a copy of the withdrawal notice. 
However, unlike the inmate in Harrell,
Goodspeed did not file a motion complaining of the
notice with the trial court.  Instead, he
immediately filed this appeal.  

            As explained in Harrell, a withdrawal
notification is not an “order” in the traditional sense of a court order,
judgment, or decree issued after notice and hearing in either a civil or
criminal proceeding.  Id. at 316 n.1; Bryant v. State, No. 07-10-0358-CV, 2011 WL 2175769, at *1 n.3
(Tex. App.—Amarillo June 3, 2011, no pet.) (mem. op.);
Jewell v. State, No. 06–10–00114–CV,
2011 WL 1642769, at *1 (Tex. App.—Texarkana Apr. 29, 2011, no pet.) (mem. op.) (“The trial court’s ruling on the inmate’s
contest [to a withdrawal notification] is what can be appealed.”).  Because a notice of withdrawal is not an
order, there is no final order from which Goodspeed
may appeal.  Williams v. State, 332 S.W.3d 694, 698 (Tex. App.—Amarillo 2011,
pet. denied) (citing Ramirez v. State,
318 S.W.3d 906, 908 (Tex. App.—Waco 2010, no pet.) (holding that “[o]nly when [the withdrawal notification is] properly
challenged and denied relief is there a trial court order that is final from
which the inmate . . . can appeal”)). 

            Accordingly, we dismiss the appeal
for want of jurisdiction.

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date
Submitted:          October 10, 2011

Date
Decided:             October 12, 2011






p;

            Initially,
we examine the motion for summary judgment with the attached affidavit of Paul
W. Peerboom, senior vice president of National.[3]  Peerboom’s affidavit states:

 [T]he
note is in default in that it has matured by acceleration and has not been paid
in full.  The guaranty is in default in
that the note has matured and has not been paid in full.

            .
. . .

 

The Peerboom affidavit further indicates a total amount
due 

 

of $190,730.07 in principal plus $5,075.54 in accrued
interest together with $400.00 in late fees. . . . [D]espite demand . . .
Grewal [has] refused to pay the amounts due under the terms of the note and the
guaranty.

 

            Because it
failed to identify a specific act or omission that would constitute a default,
Grewal attacked Peerboom’s affidavit as conclusory.  Grewal countered Peerboom’s affidavit with
the affidavit of Avtar Grewal, asserting the modification of the note, and also
alleging that:

I have not received a notice of intent to accelerate or a
notice of acceleration for the original note or the note as modified.

 

            In response,
National filed the affidavit of Dan Johnson, an employee of National.  The Johnson affidavit, with attached
correspondence, was filed as a stand-alone document on May 9, 2011. 

            On appeal,
Grewal claims that National did not adequately provide notice of intent to
accelerate the indebtedness and that, therefore, acceleration was
improper.  A negotiable instrument that
is payable at a definite time may provide for the right of acceleration of the
debt on default.  Tex. Bus. & Com. Code Ann. § 3.108(b) (Vernon 2002).  Because acceleration of a debt is viewed as a
harsh remedy, however, any such clause will be strictly construed.  See Ramo, Inc. v. English, 500 S.W.2d 461,
466 (Tex. 1973).  Texas law requires
clear notice of intent to exercise acceleration rights, followed (if the debtor
continues in default) by notice of actual acceleration. See Ogden v. Gibraltar Sav.
Ass’n, 640 S.W.2d 232, 233–34 (Tex. 1982).  “If the required notices are given,
acceleration occurs.”  Burns, 286 S.W.3d at 661.

            Waiver of
such a notice is not an issue.   

 

            Here,
National claims its summary judgment evidence proved that notice of intent to
accelerate was given on four separate occasions.[4]  The first such alleged notice is set forth in
a letter to APM Enterprises (designated as “borrower”) dated July 29,
2010.  The letter purports to set forth
past due loan payments and late charges, and advises that “all due loan amounts
be remitted to National Loan Acquisitions Company by Monday, August 9,
2010.  Otherwise, this loan will be
referred to counsel for legal action.”  

            Next,
National points to e-mail correspondence dated September 3, 2010, from Dan
Johnson with National Loan Acquisitions to AV Grewal regarding “APM Enterprises
Loan # 7973.”  The e-mail indicates that
the loan is past due and “my letter dated July 29, 2010, has expired without
any action from you.”  The e-mail closes
with the statement that “unless I hear from you by the end of today, this loan
will be referred to our legal counsel for collection.”  A second e-mail was sent to Grewal on October
4, 2010, in response to Grewal’s request to modify the promissory note to
provide for interest-only payments for at least twelve months:  

I understand that you are requesting to have
interest-only payments for 12 months. 
However, National Loan Acquisitions Company prefers to have the debt
paying down and the 6 months I/O is the most generous concession we will
make.  If this modification is not
acceptable to you, we will pursue legal action to collect the debt.

 

            National sent a final e-mail
to Grewal on October 28, 2010, indicating it has not received the executed
modification letter and asking that the executed letter be posted for next day
delivery “or this matter will be referred to legal counsel for collection.”[5]


            National
contends notice of actual acceleration was given in the form of e-mail
correspondence dated November 9, 2010, advising that the executed modification
has yet to be received, that National’s loan is delinquent for the months of
August, September, and October, and that “this loan is being referred to our
attorney for collection and you will be responsible for any legal fees
incurred.”[6]

            National
cites Burns in support of the
proposition that notice of intent to accelerate does not always require use of
the phrase “intent to accelerate.”  Burns can be distinguished on its
facts.  In Burns, this Court held the bank’s admonition that it will take “all
applicable enforcement action,” including enforcement action “as defined by the
subordination agreement,” was sufficient notice of the bank’s intent to
accelerate, even though the letter did not use the phrase “intent to
accelerate.”  The subordination agreement’s
definition of “enforcement action” included the acceleration of the
subordinated indebtedness.  The notice of
default therefore necessarily included the required notice of intent to
accelerate.  Burns, 286 S.W.3d at 662.  

            National
further relies on Fraps v. Lindsay, No.
01-02-00068-CV, 2003 WL 22810440 (Tex. App.—Houston [1st Dist.] Nov. 26, 2003,
no pet.) (mem. op.) as authority for the proposition that its notices were
sufficient.  In Fraps, a collection letter advised the debtor that if he failed to
pay the past due payment and interest, Fraps would “sell or mortgage the
property.”  Id. at *6.  Fraps is
distinguishable; both the trial and appellate court concluded that the debtor
made a “quasi-admission” that the note was accelerated, which was “some
evidence” to support the finding of the trial court.  Id. at *7.  While the correspondence in this case
indicates that the matter will be referred to legal counsel, the notice in Fraps indicates an intention to sell or
mortgage the subject property. 
Ordinarily, one cannot sell collateral without first accelerating the
maturity of the note; conversely, one can “refer something to legal counsel” or
even “take collection action,” by forcing only the matured portion of the note.  Fraps
is both distinguishable and nonpersuasive.

            Finally,
National relies on Dillard v. Freeland,
714 S.W.2d 378, 380 (Tex. App.—Corpus Christi 1986, no writ), regarding the
requirement for a notice of intent to accelerate.  In that case, the creditor made an oral
demand for payment stating that if the default was not cured, “the note would
be called and the property posted for sale.” 
Id. at 381.  The creditor explained that calling the note
meant that past due installments were due as well as the entire note.  While the words “acceleration” or “maturity”
were not used, an explanation that failure to pay the debt will result in the
note being “called” is a more commonplace method of expressing the consequences
of default.[7]  Even though National’s correspondence
evidences the intent to pursue legal action “to collect on the note,” such
statements do not equate with notice of intent to accelerate the note.[8]  Because the evidence presented does not show
that National provided a notice of intent to accelerate, National was not
entitled to judgment as a matter of law. 


IV.       Conclusion

 

            The judgment
of the trial court is reversed, and this matter is remanded for further
proceedings.

 

                                                                                    Jack
Carter

                                                                                    Justice

 

Date Submitted:          December
27, 2011     

Date Decided:             January 5, 2012

 

 

 

 

            

 

 

 

 











[1]In
May 2006, APM Enterprises, LLC, a Texas limited liability company, signed an
unsecured promissory note in the amount of $200,000.00 to GT’s Investments,
LLC, a Texas limited liability company. 
Avtar Grewal, individually, and as vice president of Grewal Hotels, Inc.,
signed as guarantor of the note.  The
note was then transferred from GT’s Investments, LLC, to National without
recourse.  The original maturity date for
the promissory note was May 23, 2009.  

 





[2]The
promissory note was modified by agreement of the parties on June 16, 2009.  The modified note indicates a loan amount of
$196,158.62, a maturity date of May 23, 2014, and an interest rate of ten
percent effective May 23, 2009, through maturity of the note.  

 





[3]In
addition to Peerboom’s affidavit, the May 23, 2006, promissory note, the
assignment of the May 23, 2006 promissory note to National, without recourse,
and the guaranty of the note executed by Avtar Grewal, individually, were
attached to National’s motion for summary judgment.

 





[4]The
referenced letter to APM Enterprises and various e-mail correspondence were
attached as exhibits to the Johnson affidavit. 






[5]The
modification letter referenced in this e-mail correspondence is not a part of
the record on appeal.  

 





[6]The
referenced e-mail correspondence is attached to the affidavit of Johnson.  The Johnson affidavit, with attached e-mail
correspondence, was filed as a stand-alone document on May 9, 2011.  The affidavit does not refer to National’s
summary judgment motion, or state that it is filed in support of that
motion.  Grewal does not directly address
the issue of whether the e-mail correspondence could appropriately be considered
as summary judgment evidence.  





[7]We
are not necessarily endorsing or approving this method of giving notice of
acceleration; it is at least more descriptive than the notice given here that
the debt would be referred to an attorney for collection.  The “collection” could have been referring
only to the matured portion of the debt.  


 





[8]National
maintains that notice of actual acceleration was given in its letter of
November 9, stating in the present tense that “this loan is being referred to
our attorney for collection.”  Because
the law requires both a notice of intent to accelerate and a notice of acceleration, we need not address this issue.